In the Matter of Hugh McCann. Hugh McCann, Appellant.

Argued April 6, 1978, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Alfred J. Tagliaferri*, with him *Peck, Young & Van Sant,* for appellant.

*John P. Gregg,* with him *Samuel H. High, Jr.,* and *High, Swartz, Roberts & Seidel,* for appellee.

OPINION BY JUDGE ROGERS, May 4, 1978:

Hugh McCann has appealed an order of the Montgomery County Court of Common Pleas which affirmed the decision of the Civil Service Commission of Cheltenham Township upholding McCann's removal from the Cheltenham Township Police Force.

In April of 1963 McCann sustained a back injury in the line of his duty as a policeman of Cheltenham Township. He returned to work for a short time but the symptoms of his injuries forced him to stop working entirely on August 28, 1963. McCann has not worked as a full-time policeman since August 1963, but after that date he frequently asked for limited or part-time duty, stating that he was unable to perform

regular duties as a full-time policeman. There has apparently been no limited duty work available and McCann has done none. Cheltenham Township paid McCann his full police salary from August 31, 1963 until May 31, 1968 and in return received an assignment of McCann's compensation benefits until November 19, 1966, when McCann agreed to a suspension of these benefits.

On April 5, 1968 at a special meeting attended by McCann, members of the township Board of Commissioners and the Chief of Police, McCann was requested to submit to a myelogram, the purpose of which was to ascertain the extent of his injuries and to decide questions concerning treatment, diagnosis and prognosis. Although his own physician recommended that he submit to the test, McCann refused. The township Public Safety Committee thereupon recommended to the Board of Commissioners that McCann be separated from the police force, effective May 31, 1968, for failure to report to work and perform the full-time duties of a police officer. The Board of Commissioners met April 30, 1968. McCann was advised of the Board's action on his case on that date by letter dated May 3, 1968, reading as follows:

Dear Officer McCann:

At a meeting of the Township Commissioners held at Curtis Hall on April 30, 1968, the following is a true and correct copy of a minute of action taken by the Board:

'Upon motion of Mr. Price, seconded by Mr. Lam, recommendation of the Public Safety Committee that Officer Hugh McCann be separated from the Police Force as of May 31, 1968 because of his failure to report to work and perform the full time duties of a policeman, was approved.'

McCann immediately requested a hearing before the Civil Service Commission. The township stopped his salary as of May 31, 1968.

On July 2, 1968 the Chief of Police furnished McCann with a writing informing him that since he refused to submit to a medical examination to establish disability, his further refusal to report and perform the full-time duties of a policeman warranted his removal from the police force. After a hearing, the Civil Service Commission on August 28, 1968 denied McCann's appeal and upheld his removal from the police force.

McCann appealed the Civil Service Commission's decision to the Montgomery County Court of Common Pleas. The court upheld McCann's dismissal but required the Township to pay McCann his full salary from May 31, 1968 until August 28, 1968, the date of the Civil Service Commission order, because McCann had not been removed from his employment until the Civil Service Commission acted.[1] This appeal followed. We affirm the order of the court below.

Cheltenham Township is a township of the First Class. The subjects of the discipline of policemen by suspension, removal or reduction in rank and their rights of appeal are governed by Sections 644 and 645 of The First Class Township Code (Code), Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§55644, 55645, which respectively and in pertinent part read as follows:

Section 644.

No person employed in any police or fire force of any township shall be suspended, removed or reduced in rank except for the follow-

---

[1] The court below also ordered the township to pay McCann the salary equivalent of the seven months vacation pay he had accumulated at the time of his removal.

ing reasons: (1) physical or mental disability affecting his ability to continue in service, in which cases the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violation of any law of this Commonwealth which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty; (6) engaging or participating in conducting of any political or election campaign otherwise than to exercise his own rights of suffrage. A person so employed shall not be removed for religious, racial or political reasons. A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed with the commission.

Section 645.

If the person suspended, removed or reduced in rank shall demand a hearing by the commission, the demand shall be made to the commission. Such person may make written answers to any charges filed against him not later than the day fixed for hearing. The commission shall grant him a hearing which shall be held within a period of ten days from the filing of charges in writing unless continued by the commission for cause at the request of the township commissioners or the accused. At any such hearing, the person against whom the charges are made may be present in person and by counsel. The township commissioners, or the chief of police when the township commissioners are not in session, may suspend any

such person without pay pending the determination of the charges against him, but in the event the commission fails to uphold the charges, then the person sought to be suspended, removed or demoted shall be reinstated with full pay for the period during which he was suspended, removed or demoted, and no charges shall be officially recorded against his record.

. . . .

In the event the commission shall sustain the charges and order the suspension, removal or reduction in rank, the person suspended, removed or reduced in rank shall have immediate right of appeal to the court of common pleas of the county and the case shall there be determined as the court deems proper. No order of suspension made by the commission shall be for a longer period than one year. Such appeal shall be taken within sixty days from the date of entry by the commission of its final order and shall be by petition. Upon such appeal being taken and docketed, the court of common pleas shall fix a day for a hearing and shall proceed to hear the appeal on the original record and such additional proof or testimony as the parties concerned may desire to offer in evidence. The decision of the court affirming or reversing the decision of the commission shall be final and the employe shall be suspended, discharged, demoted or reinstated in accordance with the order of the court.

McCann's attack on the procedures employed by the Township in his removal makes ingenious use of the opinion written for the court below. In the course of that opinion, the writer states that two errors were

made before the matter came to court—the first, by the Board of Township Commissioners in purporting to remove McCann, a power the lower court thought they did not have; and the second, by the Civil Service Commission in wording its order in terms of upholding the action of the Chief of Police in removing McCann, rather than itself removing him. The court below arrived at its conclusions on those matters by construing Section 645 of the Code as providing as the only correct procedure the following sequence: (1) the filing of written charges, (2) a Civil Service Commission hearing on the charges, and (3) if the charges are upheld a Civil Service Commission order removing the officer. McCann agrees with that part of the opinion of the lower court which denies the power of the township to remove a policeman, but disagrees with the lower court's conclusion that the Civil Service Commission had the power to order his removal. He cites the lower court's opinion for the proposition that the township could not remove him and *Banks v. Board of Commissioners of Upper Moreland Township,* 7 Pa. Commonwealth Ct. 393, 298 A. 2d 923 (1973), (where we held that the Civil Service Commission if it upholds charges should not modify the penalty of suspension or removal imposed by township commissioners) as supporting his contention that the Civil Service Commission was without power to remove him. This argument produces the remarkable result that there is no power anywhere to remove a policeman of a First Class Township. Our reading of Sections 644 and 645 of the Code is that the Board of Township Commissioners or the Chief of Police, if the latter is given the power by the Commissioners, may in the first instance suspend or remove policemen for the causes set forth in Section 644. If the policeman does not demand a hearing before the Civil Service Commission that, of course,

is the end of the matter. If he does demand a hearing, written charges must be filed with the Commission and a copy furnished to the policeman within five days thereafter. If the Civil Service Commission fails to uphold the charges the policeman must be reinstated with pay "for the period *during which he was* suspended, *removed,* or demoted." If the Civil Service Commission upholds the charges, the penalty imposed by the township authorities stands. *Banks v. Board of Commissioners of Upper Moreland Township, supra.*[2] *See also Township of Upper Moreland v. Mallon,* 9 Pa. Commonwealth Ct. 618, 309 A.2d 273 (1973).

The court below, although disapproving the removal action taken by the Board of Township Commissioners, concluded nevertheless that from the time the charges were filed on July 2, 1968 the procedures were proper and that they provided McCann with all of the protections of the statute. We agree. While we differ with the court below with respect to the effectiveness of the action of the Board of Township Commissioners in removing McCann as of May 31, 1968, the township has not appealed from the lower court's order requiring the township to restore his pay until the Commission acted on August 28, 1968 and we will not disturb the order on this ground.

McCann next complains that because he was not provided with written charges until two months after the township's removal letter, this Court should follow our Supreme Court's action in *Gardner v. Repasky,* 434 Pa. 126, 252 A.2d 704 (1969), and reverse the order of removal. In *Gardner v. Repasky* a police officer was suspended for two weeks by a borough

---

[2] Judge Kramer, in a concurring opinion in *Banks,* expressed his opinion that the Code should be construed so as to allow the Civil Service Commission to modify the penalty imposed by the township authorities.

council and was not provided with a statement of the charges until more than a year later. Although the police officer immediately appealed his suspension the Civil Service Commission did not render an opinion until more than three years later. The Supreme Court held that these actions together with other unfair procedures rendered the suspension invalid and compelled its reversal without consideration of the merits. We do not believe *Gardner v. Repasky, supra,* should control this case. First, the inordinate delays which existed there are not present here.

Further, the statute involved in *Gardner v. Repasky, supra,* required the municipality to file charges with the Commission "as soon as practicable." Section 644 of The First Class Township Code is silent with respect to the time for filing the charges with the Commission, although, of course, they should be prepared coincident with or soon after the disciplinary action and filed with Civil Service Commission promptly after the appeal. Without approving the delay in providing the Commission and McCann with written charges, we nevertheless believe that it was not so serious a lapse as to require a reversal.

Finally, McCann argues that the court below erred in finding a valid substantive basis for his removal. Section 603 of the Rules and Regulations of the Cheltenham Township Police Force provides in pertinent part:

> No person employed in the police department of the Township of Cheltenham shall be suspended, removed, or reduced in rank except for the following reasons:
>
> (1) Physical or mental disability affecting his ability to continue in service, evidenced by the certificate to that effect of a medical doctor designated by the Commission.

. . . .
(2) Neglect or violation of any official
     duty. . . .

Our reading of the record and the above regulation convinces us that this issue was correctly and articulately disposed of by the opinion of the court below:

The record discloses that Officer McCann suffered an injury to the lower part of his body which he claimed prevented him from performing his duties as a patrolman. However, he could not properly be removed under Section 603(1) of the Rules and Regulations of the Cheltenham Township Police Civil Service Commission because a certificate of a medical doctor could not be obtained. The reason for this was, and is, the reluctance of appellant to obtain a myelogram examination. The Township was quite properly of the view that such an examination was necessary to accurately assess the extent of appellant's physical disability. Such was the view of appellant's own physician. However, there was presented to both the Commission and this court ample evidence that appellant had not reported for duty since August 28, 1963. While this failure to report was undoubtedly the result of a physical injury suffered by appellant, it nonetheless constitutes a neglect of duty for which he may be removed from the police force under Section 603 (2) of the Regulations. The fact that a neglect of duty is caused by an injury suffered while in the line of duty does not immunize appellant from the applicability of Section 603 (2), especially, as here, where the township justifiably believes that a meaningful doctor's certificate can be obtained so as to trigger applicability of Section 603(1) only if the officer

takes a certain examination to which he refuses to submit.

Order affirmed.

### Order

And Now, this 4th day of May, 1978, the order of the Court of Common Pleas of Montgomery County appealed from herein, dated April 5, 1977, is affirmed.