Deborah A. Anastasi, Appellant *v.* Civil Service Commission City of Philadelphia, Appellee.

Argued December 14, 1984, before Judges MAC-PHAIL, COLINS and PALLADINO, sitting as a panel of three.

*Kenneth D. Freeman,* with him, *Kip D. Denega, Jr.,* and *S. Jay Sklar,* for appellant.

*Susan Shinkman,* with her, *James K. Grasty* and *Amy E. Katz,* Assistant City Solicitor, for appellee.

OPINION BY JUDGE MACPHAIL, February 25, 1985:

Deborah A. Anastasi (Appellant) appeals here from an order of the Court of Common Pleas of Philadelphia County affirming the decision of the Civil Service Commission of Philadelphia (Commission) discharging Appellant from her position as a police officer due to a permanent and partial disability.

Appellant, a recent inductee in the Philadelphia police force, had been seeing a lay therapist prior to her appointment to the police force to explore problems she was experiencing in her personal relation-

ships. On July 23, 1982, Appellant threatened to commit suicide.[1] At her therapist's insistence, Appellant voluntarily committed herself to the Lankenau Hospital for psychiatric evaluation.[2] Three days later, against the advice of her attending physician, Appellant signed herself out of the hospital.

Upon Appellant's release from the hospital, Appellant was instructed to see the Municipal Medical Director, John M. Lawlor, M.D. At the request of Dr. Lawlor, Appellant's psychiatrist, Dr. Alfred S. Roberts (not her lay therapist) submitted a letter of his evaluation of Appellant. Dr. Roberts determined that Appellant had experienced a "short, acute episode of depression" and indicated that Appellant could return to work as soon as Dr. Lawlor's department approved. Dr. Lawlor sent Appellant to see Dr. Paul J. Poinsard, a professor of psychiatry at Jefferson Medical College. On the basis of an extended interview with Appellant and a review of her records, Dr. Poinsard opined that Appellant did not possess the mental stability required of a police officer. In accordance with civil service regulations, Appellant was offered alternative employment.[3] When that offer was not pursued, she was dismissed from her position as a police officer.

On appeal to the Commission, Appellant presented the testimony of two psychiatrists who concluded that Appellant was mentally able to function as a police

---

[1] Appellant testified that she would not have committed suicide and that she made the threat to get her therapist's attention.

[2] She was admitted to the hospital with the diagnosis of major depressive disorder. Appellant testified that she was given the choice of either voluntarily committing herself or being involuntarily committed.

[3] The police department interviewed Appellant for the position of "Police Communications Dispatcher Trainee." Appellant refused to interview for Clerk I in Criminal Records.

officer.[4]   The Commission resolved the conflicting testimony in favor of the police department, reasoning that:

> It is common knowledge, both in and out of the medical profession, that psychiatry is a science where a difference of opinion is sometimes the general rule rather than the exception. In the instant case, the Commission is confronted with the opinions of three eminent specialists regarding appellant's present ability to perform the duties of police officer, despite whatever emotional or psychological deficiencies she may have manifested in the past.

> Police work is perhaps among the most difficult and stressful occupations. In the instant case it is undisputed that appellant stated to other persons that she would commit bodily harm to herself, and although at the time unknown to the Police Department, appellant has had need for extensive psychological treatment.

> Whether this threat was serious or only manipulative in nature is really not the issue. At the very least, it demonstrates poor judgment and a lack of candor. The Commission concludes that since it has an obligation to the general public, and since a police officer is constantly exposed to the public and is expected to exercise good judgment, protect lives and enforce the law, mental and emotional stability is

---

[4] Appellant saw Dr. Harold J. Byron, a neuropsychiatrist, fifty-four days after she threatened to commit suicide. She saw Dr. Byron only once. Appellant saw Dr. Oliver S. English, a psychiatrist, on two occasions, the first visit taking place ninety-four days after she threatened suicide. Appellant also presented written letters from two other psychiatrists which substantially agreed with the opinions of Drs. Byron and English.

a prerequisite to this occupation. Under the circumstances and for all of the reasons set forth above, we find the Department acted properly and with just cause in effectuating appellant's separation under the applicable regulation.

The Commission subsequently denied Appellant's petition for rehearing and reconsideration. The trial court affirmed the Commission's order holding that the Commission's findings were supported by substantial evidence. The instant appeal followed.

Our scope of review is limited to a determination of whether the Commission's findings are consistent with each other and with the conclusions of law, and whether they may be sustained without capricious disregard of the evidence. Section 754 of the Local Agency Law, 2 Pa. C. S. §754; *Santini v. Civil Service Commission*, 60 Pa. Commonwealth Ct. 612, 432 A.2d 301 (1981). The Commission's findings of fact, which are supported by substantial evidence, are conclusive upon appeal; only the legal conclusions drawn by the Commission remain subject to judicial review. *Foley v. Civil Service Commission, City of Philadelphia*, 55 Pa. Commonwealth Ct. 594, 423 A.2d 1351 (1980).

As she did below, Appellant contends that the decision of the Commission is not supported by substantial evidence.[5] Appellant asserts that the Commission capriciously disregarded[6] the opinions of the psychia-

---

[5] "Substantial evidence supports an administrative decision when, from an examination of the entire record and inferences therefrom, a reasonable man might have reached the same decision." *Leroi v. Philadelphia Civil Service Commission*, 34 Pa. Commonwealth Ct. 190, 196, 382 A.2d 1260, 1263 (1978).

[6] "A capricious disregard of evidence is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching the result." *Hart v. Civil Service Commission of Philadelphia*, 73 Pa. Commonwealth Ct. 26, 29 n. 3, 457 A.2d 211, 213 n. 3 (1983).

trists who testified in her behalf. The thrust of Appellant's argument is that the Commission should have weighed the evidence in her favor.[7] It is well established that the weight and credibility of the evidence is for the Commission to measure, not this Court. *Silverman v. Department of Education,* 70 Pa. Commonwealth Ct. 444, 454 A.2d 185 (1982). We may not weigh the evidence and substitute our judgment for that of the Commission. *Civil Service Commission of Philadelphia v. Saladino,* 47 Pa. Commonwealth Ct. 249, 408 A.2d 178 (1979).

Appellant also contends that the penalty imposed—dismissal—is excessive. We disagree. Courts reviewing decisions requiring administrative discretion must determine only whether reasonable discretion was exercised and may not substitute its judgment for that of the administrative agency. *Appeal of Corropolese,* 55 Pa. Commonwealth Ct. 55, 423 A.2d 28 (1980). The Commission need only present such evidence as is sufficient to support the conclusion that the dismissal is for good cause. *Leroi,* 34 Pa. Commonwealth Ct. at 196, 382 A.2d at 1263. The Commission found that Appellant did not possess the judgment and stability required of a police officer. This finding supports the conclusion that the dismissal was for good cause. We find that the Commission exercised reasonable discretion in affirming Appellant's dismissal.

Order affirmed.

### ORDER

The order of the Court of Common Pleas of Philadelphia County, dated December 30, 1983, No. 3125, is hereby affirmed.

---

[7] Appellant appears to be arguing that the testimony of Drs. Bryon and English should be given more weight than the report of Dr. Poinsard, who did not testify. This contention is patently without merit. We also note that Appellant made no objection to the introduction of Dr. Poinsard's report into evidence.

12

Judge COLINS dissents.

This decision was reached prior to the resignation of Judge WILLIAMS, JR.